**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| ROBERT ELLIOTT<br>TRUCKING, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>CATERPILLAR INC.,<br><br>       Defendant. | C.A. No. 9:11-CV-00753-RMG<br><br>**DEFENDANT'S MEMORANDUM IN**<br>**OPPOSITION TO PLAINTIFF'S**<br>**MOTION FOR CLASS CERTIFICATION** |

Defendant Caterpillar Inc. ("Caterpillar") submits this Memorandum opposing the Motion for Class Certification and Supporting Memorandum filed by Plaintiff Robert Elliott Trucking, Inc. ("Plaintiff" or "RET").

## I.  INTRODUCTION

Underlying Plaintiff's Memorandum is an outdated approach to the analysis of class certification that has been rejected by the Fourth Circuit, this Court, and recently by the United States Supreme Court in its pivotal *Wal-Mart v. Dukes* decision.  Plaintiff's Memorandum suggests that class certification should be granted if the facts alleged in the complaint and limited facts in the record "are in harmony with class treatment."  However, a plaintiff seeking class certification bears the burden of proving entitlement to class treatment and the court may certify a class only if—after conducting a "rigorous analysis"—it is satisfied the plaintiff has met its burden of showing that all of the elements of Rules 23(a) and 23(b) exist.

Plaintiff's Memorandum omits any meaningful discussion and analysis of the facts and law supporting its request for class certification and relies on little more than the bare allegations in its Complaint, boilerplate citations to legal authority, and next-to-no analysis of the specific

elements set forth under Rule 23.   The most obvious reasons why Plaintiff's Motion should be

denied are:

- **Plaintiff lacks standing, which is a fundamental jurisdictional requirement.**   The record demonstrates that Plaintiff's individual claims for breach of express and implied warranties, negligence, and repair costs all fail as a matter of law.   Plaintiff therefore lacks standing to pursue those claims on behalf of the proposed class.  (*See* Section IV.A below.)

- **Plaintiff's class definition is fatally flawed.**  Plaintiff's proposed class definition would include many individuals and businesses who purchased Caterpillar C13 and C15 engines that *do not have* and *could not have* the complained of defect.   An ascertainable, precisely defined class does not exist because individual analysis is necessary to meet the threshold requirement that the proposed class member purchased or used a Caterpillar engine with the defect Plaintiff alleges. (*See* Section IV.B below.)

- **Plaintiff has not identified any common class-wide defect.**  Plaintiff has presented no credible class-wide proof that the C13 and C15 engines suffered from a common defect. Plaintiff's only purported evidence of a class-wide defect is a letter from the manufacturer of the Plaintiff's truck, Kenworth Truck Company, which clearly indicates the purported defect is a *Kenworth problem* that *Kenworth will correct.*  (*See* Section IV.C.1 below.)  Plaintiff's Memorandum provides a list of theoretical common questions without any analysis whatsoever of how the answers to those questions would advance the claims of the class as required by *Wal-Mart v. Dukes.*

- **Plaintiff is neither a typical nor an adequate class representative.**  Plaintiff's claims are fundamentally different from the claims of the purported class.  The requirement of typicality is, therefore, decidedly absent.  Because Plaintiff's claims are at odds with the class it seeks to represent, Plaintiff cannot be an adequate class representative. (*See* Section IV.C.2-3 below.)

- **Common questions do not predominate because Plaintiff's claims all turn on claimant-specific facts and defenses.**  Individualized inquiries will be required to determine the specific elements of each class members' claims, including fundamental issues of alleged defect, causation, availability of warranty claims, and damages.  (*See* Section IV.C.4 below.)

- **Class treatment is clearly not the superior method for handling these type of claims.** Plaintiff has provided no showing that its proposed class action would be manageable, and realistic alternatives exist for the fair and efficient resolution of any claims putative class members may have.  (*See* Section IV.C.5 below.)

## II. BACKGROUND

### A. Plaintiff and Its Claims

Plaintiff is in the business of transporting wood and wood by-products (sawdust, shavings, wood chips, and bark) generated by its sister company, Elliott Sawmilling Company, to customers in South Carolina, Georgia, and beyond. (Curtis Dep. at 8-9, 19-20.)[1] RET currently owns 35 tractor-trailer trucks that it uses exclusively for its commercial hauling operations. (*Id.* at 8-9, 104-105.)

On September 10, 2007, Plaintiff purchased a new tractor-trailer truck manufactured by Kenworth Truck Company (a company that is unrelated to Caterpillar) from a Kenworth dealership in West Columbia, South Carolina. Plaintiff's new Kenworth truck was manufactured with a Caterpillar C13 on-highway diesel engine. Plaintiff has used this truck for daily short-haul deliveries (approximately 150 miles or less) to customers (such as paper mills) in South Carolina and Georgia, primarily hauling tree bark. (Curtis Dep. at 48-49.) Documents produced by Plaintiff during discovery indicate that, as of the date of this Memorandum, the truck in question has been driven over 300,000 miles. (*See* RET 1140, attached hereto as **Exhibit B**).

Plaintiff claims the Caterpillar C13 engine installed in its Kenworth Truck is defective. But Plaintiff has yet to explain precisely what is wrong with the truck or why Plaintiff believes that the problem is with the Caterpillar engine rather than components that were designed and manufactured by Kenworth. Its Complaint provides little information, vaguely describing a "problem with the CGI System" and "design and/or manufacture deficiencies . . . in the emissions and regeneration systems of the engine." (Compl. ¶¶ 8, 10, 12.) Plaintiff's Memorandum in support of class certification is no better, describing the problem as "the failure

---

[1] The cited portions of the deposition of RET's Rule 30(b)(6) witness, Jamie Curtis, are attached hereto as **Exhibit A**.

of the regeneration system in the ACERT engines [which] causes the trucks to shut down." (Pl's Mem. at 1.)   Plaintiff offers no expert or other testimony to support its assertion that the problems RET experienced were the result of a design or manufacturing defect in its Caterpillar engine.   Indeed, RET's Rule 30(b)(6) witness testified the problem was that dashboard warning lights, which were manufactured and installed by Kenworth, failed to come on and warn the driver of a problem with the regeneration system. (Curtis Dep. at 76-78.) And the only service notice Plaintiff says it received related to its Kenworth truck was a notice from Kenworth itself about a potential problem in a pipe that was connected to the Caterpillar engine — a pipe that Kenworth manufactured.  (Pl's Mem., Ex. N; Smock Aff. ¶ 11, 16.)

In any event, Plaintiff cannot show that it suffered any damages as a result of the problems it experienced with its Kenworth truck.  The truck was taken to Blanchard Machinery Company for repairs to the emission system on occasion in 2008, 2009, and 2010. (Curtis Dep. at 69.)  All of the alleged problems with the Caterpillar engine were covered by either the original Caterpillar Limited Warranty or an extended warranty purchased by Plaintiff.  Plaintiff testified that it has paid ***nothing*** for any repair or service visits related to the emission system on the Caterpillar engine. (Curtis Dep. at 70, 176-77, 186-87, 194.)

Plaintiff filed its class action complaint on February 25, 2011, asserting claims on behalf of the putative class for breach of implied warranty, breach of express warranty, negligence, and unjust enrichment on a class and individual basis.  Plaintiff asserts additional causes of action for negligent misrepresentation and violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.*, solely on an individual basis.  Plaintiff seeks compensatory damages, punitive damages, treble damages, attorney's fees, and costs. (Compl. – Prayer for Relief ¶¶ B-F.)

B.     **The Caterpillar Engines and Related Emissions Technology**

1.     **The C13 and C15 Engines**

First manufactured and sold in 2004, Caterpillar's C13 and C15 model engines are heavy-duty engines designed for use in both on-highway and off-highway applications. (Smock Aff. ¶ 6.)[2]  The on-highway uses include, but are not limited to, mobile cranes, buses, recreational vehicles, rescue vehicles, long line trucks, short line trucks, dump trucks, concrete trucks, and trash trucks to name just several applications. (*Id.* at ¶ 8.)  The off-highway applications include fishing boats, workboats, dredging, drilling (both mining and non-mining), electrical generation, various types of construction (paving, trenching, etc.), agricultural, irrigation, forestry, rail maintenance, concrete and asphalt work, to name several but not all applications. (*Id.* at  ¶ 7.) While the two engines are similar in design, the C15 is a larger engine with greater horsepower that consequently uses larger components and different lubrication and air systems than C13 engines. (*Id.* at ¶ 6.)

Like all on-highway engines manufactured and sold by Caterpillar, the C13 and C15 engines are intended for commercial use and are sold to original equipment manufacturers ("OEMs") (such as Kenworth) for use in their products.  (*Id.* at ¶ 9.)  As part of its sale of the on-highway C13 and C15 engines to OEMs, Caterpillar provides the "CATERPILLAR LIMITED WARRANTY New Heavy Duty Engines Powering On-Highway Vehicles Worldwide." (*Id.* at ¶ 18.)  For new engines powering on-highway vehicles (other than those powering recreational vehicles, fire trucks, emergency service vehicles, and ambulances),[3] this warranty covers defects

---

[2] The Affidavit of Charles R. Smock, Assistant Technical Coordinator for Caterpillar, is attached hereto as **Exhibit C**.

[3] The standard warranty period for new engines powering recreational vehicles, fire trucks, emergency services vehicles and ambulances is 60 months or 200,000 miles, whichever occurs first after date of first delivery. (Smock Aff. ¶ 18, Ex. D.)

in engine material and workmanship for 24 months after date of delivery to the first user. (*Id.* at ¶ 18, Ex. D.)  The warranty is expressly limited to repair or replacement of defective engine parts or components.  Any other warranties are expressly disclaimed, as is liability for incidental and consequential damages. (*Id.*)

Caterpillar also offers customers the option of purchasing "Extended Service Coverage" ("ESC") at the time of delivery and any time within the standard warranty period. (*Id.* at ¶ 20.) Extended Service Coverage is administered by Caterpillar Insurance and submitted through the normal warranty process. (*Id.*)  "ESC" and "ESC Plus" can be purchased in a variety of combinations including timeframes of 3, 4, 5, 6 or 7 years and mileages including 300,000, 400,000, 500,000, 600,000 and 700,000 miles (*i.e.*, 4 years / 500,000 miles). (*Id.*)  There are also component coverage plans available for components that are not part of ESC, including, but not limited to, injector, turbo, water pump and CRS/DPF. (*Id.*)  To obtain warranty coverage for these additional components, the customer must first purchase the base ESC or ESC Plus plan. (*Id.*)  The customer then has the ability to add any combination of component coverage it chooses. (*Id.*)  The decision to purchase these additional coverages may be based on a variety of differentiating factors, including, but not limited to, average miles per year, length of trade cycle, or market fluctuations. (*Id.*)

### 2.     Changes to the C13 and C15 Emissions and Regeneration Systems

Plaintiff defines its proposed class to include all purchasers or users of C13 and C15 Caterpillar engines in South Carolina during the five year period before the Complaint was filed. Plaintiff suggests that all of those engines have the same design and claims that they suffer from the same alleged defect. In fact, however, since the C13 and C15 engines were introduced in 2004, changes have been made to the engine design to respond to and comply with more

6

stringent emissions requirements mandated by the EPA for on-highway, heavy duty diesel engines. The changes that were made to comply with more stringent EPA regulations, which went into effect in 2007, apparently give rise to Plaintiff's claim.

Both C13 and C15 engine models were initially designed using a new technology developed by Caterpillar that reduced vehicle exhaust emissions. (*Id.* at ¶ 3-4.) This technology is known as the Advanced Combustion Emissions Reduction Technology (ACERT) system. (*Id.* at ¶ 4.) In order to meet the EPA's emissions standards for 2007, Caterpillar combined its ACERT system with two new technologies: "clean gas induction" (CGI) and "diesel particulate filter" (DPF). (*Id.*)[4] The CGI system was designed to have the engine recirculate filtered exhaust back through the combustion process. (*Id.* at ¶ 10.) A CGI pipe was attached to the DPF filter so that exhaust gases are pulled after the gases have been cleaned by the DPF filter. (*Id.*; *see also* Ex. A to Smock Aff. (diagram of 2007 CGI system Architecture)). This second pass through the combustion process creates a much cleaner exhaust gas for recirculation, not only adding fuel efficiency but also reducing the amount of pollutants in the final exhaust. (*Id.*) Caterpillar sold its C13 and C15 engines to OEMs without a CGI pipe. (*Id.* at ¶ 11.) Because of the varying designs of their products, OEMs designed, manufactured and installed their own CGI pipes. (*Id.*)

In order to keep the 2007 EPA compliant C13 and C15 engines running properly and in compliance with the 2007 emission requirements, it is necessary for excessive soot buildup in the exhaust to be burned off. (*Id.* at ¶ 12.) Sensors in the engine monitor soot buildup and at appropriate times initiate a process to burn off excess soot. (*Id.*) This process is known as "regeneration." (*Id.*) The operator of the vehicle is made aware of the regeneration process by a series of dash lights (which are installed by the OEMs.) (*Id.*) In the event the system-initiated

---

[4] Prior to 2007, the CGI and DPF systems were not used in any Caterpillar engines. (Smock Aff. ¶ 4.)

regeneration is not completed, the operator must manually regenerate the system. (*Id.*)  If the operator fails to regenerate the system, the engine will "de-rate" (meaning that the engine will reduce horsepower and RPMs) in order to protect the engine and system and stay in compliance with EPA standards. (*Id.*)  Ultimately, the engine will stop operating if not appropriately regenerated. (*Id.*)

To burn off excess soot, the regeneration system uses what Caterpillar refers to as an "Aftertreatment Regeneration Device" ("ARD"). (*Id.* at ¶ 14.)  The ARD periodically heats the exhaust to eliminate soot from the DPF. (*Id.*)  The ARD consists of control valves, combustion head and sensors. (*Id.*)  The ARD housing design varies from OEM to OEM and from model to model. (*Id.*) There are 47 different versions of the housing with different electronic control modules calibrations designed to make it fit within the OEM's needs. (*Id.*)

The interval between the need for regeneration will vary from vehicle to vehicle depending upon many factors including: the environment in which the vehicle operates (*e.g.*, hot versus cold climates, dusty versus clean work environments, long line versus short line, high altitude versus lower altitudes, etc.), the driving characteristics of the operator, the load factors placed on the engine, the speed and duration of that speed when in operation (*e.g.*, idle time versus on-highway time, variable engine speed versus consistent highway speed, etc.), whether the truck is power-take-off (PTO) equipped and how, when, and of what duration the PTO is used. (*Id.* at ¶ 15.)  Generally, trucks that work in dusty environments with stop-and-go driving and high idle times will have to regenerate the system more often than a long-line application where the vehicle maintains highway speeds for long periods of time with a consistent load rating. (*Id.*)

8

Plaintiff purchased a 2007 compliant engine; it claims that the CGI system on its C13 engine is defective and continues to break down notwithstanding the fact that it has been repaired on a number of occasions.  As noted above, Plaintiff has not offered any expert testimony or other evidence to explain what is supposedly wrong with its C13 engine, nor has it offered any evidence that there is a defect in the CGI system which has affected all of the engines owned or used by the members of the proposed class.  Pre-2007 models clearly did not have a CGI system and, thus, cannot possibly be included in the proposed class.[5]  Furthermore, for the reasons outlined below, Plaintiff has failed to carry its burden of showing that it is entitled to pursue this case on behalf of a class even with respect to the much smaller group of purchasers or users of 2007 EPA compliant C13 and C15 engines sold in South Carolina.

## III. LEGAL STANDARD FOR CLASS CERTIFICATION

In its Memorandum, Plaintiff grossly understates its burden, even suggesting that this Court can simply rely on the bare allegations in the Complaint in deciding whether to certify a class.  In its recent opinion in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Supreme Court reiterated and emphasized that a plaintiff seeking class certification bears the burden of proving each element of Rule 23 and that the court must undertake a "rigorous analysis" to ensure that burden has been met:

> Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule -- that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.

---

[5]    The number of 1,711 C13 and C15 engines in Caterpillar's Notice of Removal was based on Plaintiff's proposed class definition of all purchasers or users of C13 and C15 Caterpillar engines in South Carolina in the last five years (Notice of Removal ¶ 27) and thus included all C13 and C15 engines sold from January 1, 2006 forward (*id.* at ¶ 28), while the number of 160 engines in Caterpillar's answers to interrogatories was based on EPA 2007 compliant engines, *i.e.*, engines equipped with the CGI system, sold in South Carolina.  (*See* Def's Answers to Pl's Interrogs. at 4.)

*Wal-Mart*, 131 S. Ct. at 2551 (emphasis in original).  Shortly before the *Wal-Mart* opinion was issued—but entirely consistent with its conclusions and instructions—this Court explained in detail the analysis that must be undertaken at the class certification stage:

> The party seeking class certification bears the burden of establishing all Rule 23 requirements.  If one of the requirements necessary for class certification is not met, the Plaintiffs' effort to certify a class must fail.
>
> Moreover, a district court has broad discretion in deciding whether to certify a class.  However, when determining whether the requirements of Rule 23 have been met, this Court must not merely rely on the allegations found in the plaintiff's complaint, but must take a close look at relevant matters, conduct a rigorous analysis of such matters, and make findings that the requirements of Rule 23 have been satisfied.  Plaintiffs must demonstrate how they intend to prove their claims on a classwide basis so that the Court can envision the form trial on those issues would take.  Stated differently, the Court must conduct a thoughtful examination that envisions how a class action would unfold—a mental dress rehearsal of anticipated proof, the jury instructions, the verdict sheet, and the burdens imposed on the jury.

*Noel v. Hudd Distrib. Servs., Inc.*, 274 F.R.D. 187, 190-91 (D.S.C. 2011) (internal citations and quotations omitted); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982) ("[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable").

The Plaintiff bears the burden of proving[6] all of the elements of Rule 23(a) and the applicable requirements of at least one section of Rule 23(b).  *Thorn v. Jefferson-Pilot Life Ins.*

---

[6] The facts supporting each element of Rule 23 must be established by a preponderance of the evidence, rather than by some lesser standard.  *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met."); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008) ("Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence.  In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23.").

*Co.*, 445 F.3d 311, 318 (4th Cir. 2006).[7]  Moreover, case law adds two other threshold requirements for certification: (1) the proposed class representative has standing—*i.e.*, he or she is a member of and has suffered the same alleged injury as the proposed class; and (2) the existence of a precisely defined, ascertainable class. *See East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977); *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976).

## IV.  ARGUMENT

### A.   Plaintiff Lacks Standing to Pursue Its Claims on Behalf of the Proposed Class

A fundamental requirement in any class action is that the Named Plaintiff demonstrate standing through a "requisite case or controversy between themselves personally and [the Defendant]," not merely that injury "has been suffered by other, unidentified members of the class to which [the Plaintiff] belong[s] and which [the Plaintiff] purport[s] to represent." *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982); *see also Rodriguez*, 431 U.S. at 403; *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009).  To have standing, the Named Plaintiff in this case must have a personal claim for the warranty and tort causes of action asserted on behalf of the class and must have sustained the same injuries that Plaintiff is seeking to recover on behalf of the class. *Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 77 (1991); *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990); *Hawkins v.*

---

[7] A court examining the question of class certification must look at the legal elements of the underlying causes of action and defenses and determine whether the named plaintiff's claims satisfy the requirements of Rule 23 within the framework of the law applicable to those claims. *Falcon*, 457 U.S. at 160; *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d. 1228, 1234 (11th Cir. 2000); *Cox House Moving, Inc. v. Ford Motor Co.*, No. 7:06-1218-HMH, 2006 U.S. Dist. LEXIS 81132 (D.S.C. 2006).  Rule 23 is a rule of procedure governing joinder of claims and does not and cannot change the substantive law applicable to the causes of action asserted in Plaintiff's Complaint.  *Amchem Prods., Inc. v. Wind*sor, 521 U.S. 591, 613 (1997); *Deposit Guar. Nat'l. Bank v. Roper*, 445 U.S. 326, 332 (1980); *In re Baldwin-United Corp.*, 770 F.2d 328, 335 (2d Cir. 1985).  Thus, each class member must ultimately prove his or her claim under the applicable substantive law.

*Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir. 2001). "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Carter v. West Publishing Co.*, 225 F.3d 1258, 1262 (11th Cir. 2000). "[S]tanding cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record'. . . [a]nd 'the necessary factual predicate may not be gleaned from the briefs and arguments themselves.'" *Chesapeake B & M, Inc. v. Harford County*, 58 F.3d 1005, 1014 (4th Cir. 1995) (citations omitted).[8]

Here, Plaintiff lacks standing to pursue the class claims set forth in the Complaint for the following reasons:

1.     **Implied Warranty:** As part of the sale of the on-highway C13 engine installed in Plaintiff's truck to Kenworth, Caterpillar provided its express, written "Caterpillar Limited Warranty," which includes the following provision disclaiming any other warranties, whether express or implied:

> THIS WARRANTY IS EXPRESSLY IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, EXCEPT CATERPILLAR EMISSION-RELATED COMPONENTS WARRANTIES FOR NEW ENGINES, WHERE APPLICABLE. REMEDIES UNDER THIS WARRANTY ARE LIMITED TO THE PROVISIONS OF MATERIAL AND SERVICES, AS SPECIFIED HEREIN.

---

[8] The Named Plaintiff's lack of standing cannot be corrected by certifying a class and then trying to find a "better" named plaintiff with standing. *Caranci v. Blue Cross & Blue Shield of R.I.*, 194 F.R.D. 27, 32 (D.R.I. 2000) (holding that "a finding that the named plaintiffs possess standing to sue is a prerequisite to a determination of [Rule] 23 class certification"); *Kasprzak v. Am. Gen. Life & Accident Ins. Co.*, 942 F. Supp. 303, 306 (E.D. Tex. 1996) (rejecting as "ill conceived and without merit" the argument proposed by plaintiffs' counsel that "even if the named class representative cannot and does not meet the standing requirement, [the] court should ignore the threshold issue of standing and proceed to inquire whether a real class representative can be found for the proposed class in the named plaintiffs' pleadings, pursuant to [Rule] 23").

> CATERPILLAR IS NOT RESPONSIBLE FOR INCIDENTAL
> OR CONSEQUENTIAL DAMAGES.

(Smock Aff. ¶ 18, Ex. D (capitalization and emphasis in original)).

Plaintiff's 30(b)(6) witness testified that Plaintiff received, saw, and was familiar with the warranty and the disclaimers contained in the warranty. (Curtis Dep. at 87-92.)    Plaintiff's individual claim for breach of implied warranty against Caterpillar, particularly for alleged defects in this commercial, non-consumer product, therefore fails as a matter of law, and Plaintiff consequently lacks standing to pursue that claim on behalf the absent class members. *See, e.g., Laidlaw Envt'l Servs. (TOC) v. Honeywell, Inc.*, 966 F. Supp. 1401, 1412 (D.S.C. 1996); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F. Supp. 1027, 1037-38 (D.S.C. 1993).

2.    **Express Warranty:**  Under the standard Caterpillar Limited Warranty applicable to Plaintiff's engine, Plaintiff received coverage for defects in engine material and workmanship for 24 months after date of delivery to the first user. (Smock Aff. ¶ 18, Ex. D.)   Because Plaintiff's purchase occurred in September 2007, Caterpillar's contractual relationship with Plaintiff under the original Caterpillar Limited Warranty expired approximately 15 months before this suit was filed so Plaintiff lacks standing to sue under the original Limited Warranty. *See Noel*, 274 F.R.D. at 192-93 (holding that "the Plaintiffs in this action lack standing to seek the declaratory and injunctive relief sought because the named Plaintiffs . . . are no longer parties to leases . . . .").[9]

3.    **Negligence:**  Under the economic loss rule in South Carolina, "there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself."

---

[9] Even if the extended 60 month / 200,000 mile portion of the original Limited Warranty applied, documents produced by Plaintiff during discovery establish Plaintiff had over 200,000 miles as of March 3, 2010, almost one year before suit was filed. (*See* RET 1021, 1048, attached hereto as **Exhibit D**.)

*Sapp v. Ford Motor Co.*, 386 S.C. 143, 147, 687 S.E.2d 47, 49 (2009) (internal citations omitted).    As explained in *Sapp*, "where a product damages only itself, tort law provides no remedy and the action lies in contract . . . ." *Id.*; *see also Palmetto Linen Servs., Inc. v. U.N.X., Inc.*, 205 F.3d 126, 128 (4th Cir. 2000); *Trevillyan v. APX Alarm Sec. Sys.*, No. 2:10-1387-MBS, 2011 U.S. Dist. LEXIS 694, *21-*22 (D.S.C. Jan. 3, 2011) (citing and quoting *Sapp*).

In the present case, RET's 30(b)(6) witness testified the only damage Plaintiff has suffered is to the engine itself.  No other property of Plaintiff was harmed, nor did any individual suffer personal injury as a result of the alleged defect. (Curtis Dep. at 157-60.)  Because Plaintiff's claim for negligence fails as a matter of law, Plaintiff lacks standing to pursue such a claim on behalf of the proposed class.

**4.**      **Repair Costs:**    In its Complaint, Plaintiff seeks to assert claims on behalf of the class for repair costs due to alleged defects in the Caterpillar C13 and C15 engines. (Compl. ¶ 11.)  However, Plaintiff's 30(b)(6) witness testified that RET has paid ***nothing*** for the repairs to the engine related to the alleged defect in the emissions system. (Curtis Dep. at 70, 176-77, 186-87, 194.) A named plaintiff cannot represent a class asserting claims that it does not have standing to raise individually. *See, e.g., Hawkins*, 251 F.3d at 1238.

**B.**      **Plaintiff Has Not Established The Existence of An Adequately Defined Class**

In order for a class to be certified, the proposed class must be sufficiently defined so the Court can determine whether a particular individual is a class member. The identity of the class members must be ascertainable by reference to objective criteria.  *Roman*, 550 F.2d at 1348.  "The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf. Each class member must have standing to bring the suit in his own right." *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982); *Vietnam Veterans*

14

*Against the War v. Benecke*, 63 F.R.D. 675, 680-81 (W.D. Mo. 1974). Finally, the class "must be restricted to individuals who are raising the same claims or defenses as the [named plaintiff]." *Jagnandan v. Giles,* 379 F. Supp. 1178, 1184 (N.D. Miss. 1974). "The failure to establish the existence of a class, alone, is enough to deny class certification." *McElhaney*, 93 F.R.D. at 878.

In its Complaint, Plaintiff defines the proposed class as "all consumers in South Carolina who purchased and/or used Caterpillar C-13 and C-15 engines in the last five years." (Compl. – Prayer for Relief ¶ A.) However, the defect complained of is either the CGI pipe used on Kenworth trucks or the CGI emissions system which was used on C13 and C15 engines only after January 1, 2007. For the reasons outlined above, the class cannot possibly include purchasers and users of C13 and C15 engines that were manufactured prior to 2007 because those engines do not have the "CGI system." (Smock Aff. ¶ 17.) Additionally, Plaintiff's proposed class definition is overbroad in a number of other critical respects and creates an uncohesive class from the standpoint of liability and damages. (*See, e.g.,* McCormick Aff. ¶ 19, 25, 29, attached hereto as **Exhibit E**.) The following are specific examples of persons included in the Plaintiff's class definition who have not been injured and have absolutely no claim related to the CGI system on the C13 or C15 engines:

1. Purchasers and users of C13 and C15 engines for both on-road and off-road use manufactured prior to 2007 which do not have the "CGI system." (Smock Aff. ¶ 17.)

2. Purchasers and users who, even after 2007, purchased or used C13 or C15 engines for multiple off-road applications which do not have the "CGI system." (Smock Aff. ¶ 17.)

3. Purchasers and users of C13 and C15 engines which were not installed in Kenworth trucks and do not have the CGI pipe installed by Kenworth on the CGI system. (Smock Aff. ¶ 16.)

4. Purchasers and users of C13 and C15 engines who have not experienced the problems with the regeneration system dashboard indicator lights that Plaintiff's 30(b)(6) witness claimed was the problem with the subject truck and engine. (Curtis Dep. at 76-78.)

5. Purchasers and users of C13 and C15 engines who experienced no problems at all with these engines.

6.  Purchasers and users of C13 and C15 engines who, like Plaintiff, have had all repairs covered by the Caterpillar Limited Warranty for their individual engines.

7.  Purchasers and users of C13 and C15 engines who have incurred no damage to persons or other property as a result of the alleged engine defect and therefore are barred from asserting any tort claim under the South Carolina economic loss rule.

8.  Purchasers and users of C13 and C15 engines subject to the disclaimer of implied warranties contained in Caterpillar's Limited Warranty and therefore lack standing to recover under any claim for breach of implied warranty. (Smock Aff. ¶ 18, Ex. D.)

9.  Purchasers and users of C13 and C15 engines who have suffered no "down time," lost profits, or lost income for any number of reasons—such as, like Plaintiff, those individuals who had spare or back-up trucks at hand to prevent such losses.

There is no way to define the class to avoid including these groups of purchasers/users, none of whom belong in the class. The only way to weed out those who have no claim would be to conduct individual discovery with regard to the circumstances surrounding each engine and each purchase and then hold a mini-trial for each would-be class member to determine whether he, she or it had experienced the same claimed defect and thus should be a member of the proposed class. That is the very antithesis of a class action. *See, e.g., Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575, 580-81 (N.D. Ill. 2005) (holding that class not ascertainable when definition involves mere purchase of a particular product during a five-year period, where only those who had been deceived belonged in the class); *Adair v. Johnston*, 221 F.R.D. 573, 578 (M.D. Ala. 2004) (holding that "[w]hen individualized fact-finding and litigation would be necessary in order to identify class members, class certification is inappropriate"); *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 53 (D. Conn. 2004) (holding the "proposed class is untenable because the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership").

**C.**    **Plaintiff Cannot Satisfy the Prerequisites for Class Certification Under Rule 23**

Class certification should also be denied because Plaintiff has failed to establish that the elements of either Rule 23(a) or (b) are satisfied, as even one missing element precludes class certification. *Noel*, 274 F.R.D. at 190. "Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

**1.**    **The Named Plaintiff Has Failed to Show a Question of Law or Fact Common to the Class[10]**

Because Plaintiff has not shown that there is a common defect that affects all of the engines in the proposed class, it has failed to meet its burden under Rule 23(a)(2) of showing that there are questions of law or fact common to the class. *See Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). To satisfy the commonality requirement, there must be "substantial facts or questions of law common or typical to all members of the certified class" and there must be "commonality . . . between the claims of each plaintiff that would propel [the] case through class treatment . . . ." *Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990).

> Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. . . . Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Wal-Mart*, 131 S.Ct. at 2551. Commonality on a broad or general issue cannot satisfy Rule 23(a)(2). Commonality is satisfied and "[c]lass certification is only proper when a determinative critical issue overshadows all other issues." *Stott*, 916 F.2d at 145. Even if the plaintiff class is attempting to proceed under the same legal theory, class certification is inappropriate where the

---

[10] Because Plaintiff's class definition is fatally flawed, it is impossible to undertake any real analysis as to whether the Rule 23(a)(1) "numerosity" requirement is met.

court must engage in individualized inquiries as to each class member's claims to determine liability. *Id.* at 145-46; *see also Lienhart*, 255 F.3d at 146 (noting that the questions common to the class "must be dispositive and overshadow other issues").

A plaintiff moving for class certification cannot satisfy commonality by simply listing theoretical common questions. The Supreme Court has made clear that "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common **answers** apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 131 S.Ct. at 2551 (emphasis in original).

Plaintiff has failed to meet its burden of identifying common issues. Instead of providing facts that are common among the class, Plaintiff's Memorandum states:

> All questions of law and fact ***revolve around*** the singular issue that CAT's ACERT engines contain a known latent defect which causes the engine to shut down sporadically and makes the product unsuitable for its normal and foreseeable use.

(Pl's Mem. at 11) (emphasis added.) Plaintiff's use of the phrase "revolve around" is slight-of-hand to disguise the problem that Plaintiff has failed to point to any credible evidence of a class-wide defect with Caterpillar C13 and C15 engines.

Plaintiff has set forth a variety of vague theories as to why its truck has experienced problems. (*See* Section II.A, *supra*.) However, Plaintiff has not offered any expert testimony to explain what the problem is with its truck, let alone to show that whatever problems it has experienced are common in C13 or C15 engines and capable of class-wide resolution. *See, e.g., Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 817 (7th Cir. 2010) (vacating order certifying class where expert's opinion on product defect was unreliable and stating expert "testimony is necessary to show that Plaintiffs' claims are capable of resolution on a class-wide basis and that

18

the common defect in the [product] predominates over the class members' individual issues").

Indeed, the only purported evidence Plaintiff has offered of a specific, common defect is a

"service letter" Plaintiff attached as "Exhibit N" to its Memorandum:

> The defendant is aware of the defective system.  It sent a service
> letter to engine owners attempting to patch the defective system.
> (Exhibit N)  While the service letter attempts to point a finger
> towards another manufacturer, it is clear there is a single problem
> and it is being dealt with in a uniform fashion.

(Pl's Mem. at 6.)  Contrary to Plaintiff's assertion, Plaintiff's key, critical document ("Exhibit

N") is not a letter from Caterpillar, ***but is a letter from Kenworth Truck Company*** addressed to

Plaintiff as "Kenworth Customer" and signed by "Director, Quality Services, Kenworth Truck

Company."[11]   The letter does not point to any problem with the Caterpillar CGI system or any

other part of the Caterpillar engine.   Rather, the letter clearly explains that the problem is the

exhaust delivery pipe that is connected to the engine's CGI system and will be fixed ***by***

***Kenworth*** at a Kenworth dealer. (Pl's Mem., Ex. N.)

Plaintiff's blatant mischaracterization of this letter cannot hide the fact that it simply does

not describe any defect in the Caterpillar engine, much less a purported common, class-wide

defect attributable to Caterpillar; nor does it evidence any efforts by Caterpillar to fix the

problem.  The true facts are that the CGI pipes are not supplied by Caterpillar, but are designed,

manufactured, and installed by OEMs, such as Kenworth. (Smock Aff. ¶ 16.)    Because

Plaintiff's contention that this "service letter" is proof of a common, class-wide defect is wholly

belied by the record in this case—including the letter itself—Plaintiff is left with no evidence

---

[11] There is no evidence in the record at all that this letter was sent on behalf of Caterpillar or
that the individual signing the letter was authorized to act on behalf of Caterpillar. *See, e.g.,*
*Triplett v. Soleil Group, Inc.*, 664 F. Supp. 2d 645, 650 (D.S.C. 2009) (stating that "[a] party
asserting agency as a basis of liability must prove the existence of the agency, and the agency
must be clearly established by the facts." (quoting *Frasier v. Palmetto Homes*, 323 S.C. 240,
244, 473 S.E.2d 865, 867 (Ct. App. 1996)).

that a common defect exists. *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 269 (D.D.C. 1990) (finding that to obtain class certification, the plaintiffs "must present credible classwide proof that the Ford vehicles in question suffered from some common defect . . ."). But even assuming that Plaintiff could point to some evidence that some engines suffered from a defect (which it clearly has not done), that would not be enough to show that there are common questions affecting its entire proposed class. As described above, the 2007 C13 and C15 engines are used in a variety of different vehicles, with dozens of different housing configurations and a myriad of different uses. Under these circumstances, "the court would be forced to make individualized inquiries concerning the use, maintenance, and service history of each class member's vehicle to determine whether the common defect exists in each class member's engine and whether each class member has a cognizable warranty and implied warranty claim." *Cox House Moving*, 2006 U.S. Dist. LEXIS 81132 at *12-*13.

Aside from its unsubstantiated allegations of a common defect, the only other allegedly wrongful act for which Plaintiff offers any class-wide evidence is Plaintiff's allegation that "[t]he defendant has stated and continues to state on its website that a customer can expect a useful life of approximately 1,000,000 miles out of its engines." (Pl's Mem. at 6.) It is not clear what use Plaintiff intends to make of this statement. But if it is treating the statement as an express warranty, that claim would also fail to raise common questions.

First, the very document Plaintiff attaches to its Memorandum does not say what Plaintiff claims. The portion of the website Plaintiff references actually states: "Laboratory tests and engine disassembly analysis indicate Cat® C13 engines are expected to have a B50 life of one million miles with Caterpillar's recommended maintenance." (Pl's Mem., Exs. J & K.) Plaintiff's substitution of the term "useful life" in place of the term actually contained in the

statement, "B50 life," materially changes the meaning of the statement and is misleading.  As

explained in the affidavit of Charles R. Smock, the term "B50 life" is an industry-specific term:

> The B50 life of an engine is an industry standard that provides for
> an estimate of when 50% of the engines of a certain type will
> require an engine rebuild.  It is an estimate created using a set of
> assumptions about operating conditions. Consequently, B50 values
> are indicators that can be compared among different engine brands
> and types to measure the robustness of a product.  It is not a
> guarantee.  Factors that have a direct bearing on how long the
> engine can be operated before a major rebuild as contemplated
> under the B50 designation are some of the same factors as noted in
> Paragraph 11 above.

(Smock Aff. ¶ 22.)[12]  Thus, Caterpillar's statement says nothing about how any individual engine

will perform under a variety of different operating conditions.

Second, even assuming the website statement could be deemed a warranty by Caterpillar,

the Court's inquiry would quickly devolve into an individual case-by-case inquiry to determine

whether any proposed class member retrieved, viewed, and relied upon the statements made on

the website in connection with that individual class member's purchase of a C13 or C15 engine

and whether those statements form the basis of a cognizable breach of warranty claim.[13]

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 340 (4th Cir. 1998) (finding lack of

commonality of proposed class claim for breach of contract where class members had different

---

[12] The Court need not rely on Mr. Smock's affidavit for a definition of the term "B50 life."  A
quick search of this term on the internet retrieves many pages explaining the meaning of "B50
life."  *See, e.g.,* http://www.hino.com/download/89/file/HINO_B10-B50.pdf  (retrieved Oct. 3,
2011).

[13]  Additionally, Plaintiff lacks standing to assert any claim based on the representations on
the website document because the record reflects that Plaintiff's C13 engine has never had an
engine rebuild. (Smock Aff. ¶ 23.)  Plaintiff therefore cannot claim that Caterpillar breached any
alleged warranty regarding the B50 life of the engine.

contracts with different terms).[14]

Plaintiff also complains about alleged diminution in resale value of its truck, which is not typically recoverable as damages for breach of warranty. *See Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 289 (4th Cir. 1989). Additionally, any effect on resale value would be highly individualized based on factors such as mileage or hours of use of the equipment, repair or accident history, and condition of the equipment and cannot be modeled on a class basis using a formula. *See* McCormick Aff. ¶ 29; *see also Broussard*, 155 F.3d at 342-44 (individualized damages destroy commonality and typicality).

Plaintiff also attempts to demonstrate commonality by reciting a boilerplate list of issues it claims are common to all class members. (Pl's Mem. at 12-13.) However, its position is the exact deficiency the Supreme Court found in *Wal-Mart*—a party seeking class certification cannot simply list purported common issues, "even in droves," but must provide an explanation and proof of how answers to these common issues will advance the claims of the purported class. 131 S.Ct. at 2551.

## 2.    Plaintiff's Claims Are Not Typical of Those Absent Class Members

Under Rule 23(a)(3), the claims of the class representative must also be "typical" of the claims of the class members. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 260 (4th Cir. 2005); *Noel*, 274 F.R.D. at 191. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (quoting *Broussard*, 155 F.3d at 340). To

---

[14] This problem also exists with regard to an express warranty claim based on the actual written warranties from Caterpillar because individual standard warranties and extended warranties are negotiated by customers for different terms and conditions. (*See* Section II.B.1, *supra*.) Unlike the case cited by Plaintiff, *Brunson v. Louisiana-Pacific Corp.*, 266 F.R.D. 112 (D.S.C. 2010), in the present case, there is no evidence of a common written warranty given to purchasers of C13 and C15 engines, but rather multiple variations and combinations of warranties. *See Broussard*, 155 F.3d at 339.

deal with typicality under Rule 23(a)(3), the trial court must examine "the elements of plaintiffs' *prima facie* case and the facts on which the plaintiff would necessarily rely to prove it . . . [and] the extent to which those facts would also prove the claims of the absent class members." *Deiter,* 436 F.3d at 466-67.  "The representative party's interest in prosecuting his own case must **simultaneously** tend to advance the interests of the absent class members. . . . But when the variation in claims strikes at the heart of the respective causes of actions, [the Fourth Circuit has] readily denied class certification." *Id.* (emphasis added).[15]

As a threshold matter, Plaintiff's claims are not typical of the class it seeks to represent because, as demonstrated above, its claims for breach of the original express warranty, breach of implied warranty, negligence, and recovery of repair costs fail as a matter of law.  Additionally, Plaintiff's claims for damages are decidedly not typical.  While Plaintiff claims damages arising from breach of express and implied warranties, Plaintiff admitted that it has paid nothing for warranty work.  Plaintiff contends that it has suffered damages because it purchased an extended warranty that it would not have otherwise bought.  There is no evidence that the purchase of extended warranties is typical of the class.  To the extent that class members may have complaints about their C13 or C15 engines, their damages are likely to be highly individualized and incapable of being determined on a class-wide basis. (*See, e.g.,* McCormick Aff. ¶ 13, 28, 31.)  Thus, typicality is missing. *Noel*, 274 F.R.D. at 191 (citing *Broussard*).

Plaintiff also testified that it had two spare trucks that were available and used any time the subject truck or any other truck in its fleet needed maintenance or repairs. (Curtis Dep. at 137; *see also* Curtis Dep. at 9, 33.)  Consequently, there are serious questions as to whether

---

[15] "Rule 23(a)(3) may . . . [be] used to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present."  7A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2005).

Plaintiff has any claim for lost time and lost profits as alleged on behalf of the putative class. (Compl. ¶¶ 11, 16.)

Moreover, based on the deposition testimony of Plaintiff's 30(b)(6) witness, it appears RET's real complaint is that the dashboard warning lights installed on its Kenworth truck did not function correctly. (Curtis Dep. at 76-77.)  This claim has nothing to do with the functioning of the Caterpillar C13 engine and is "not typical and not consistent with engine de-rating caused by regeneration issues." (Smock Aff. ¶ 11, 12, 13.)  Instead, it is a problem that lies with the manufacturer of the truck and components installed in the dashboard system. (*Id.*)  Inquiry into this issue will not advance the claims of the proposed class on the question of whether the subject Caterpillar C13 and C15 engines were defective.

To the extent Plaintiff is trying to create a warranty claim based on statements from Caterpillar's website regarding the "B50 life" of the subject engines, whether Plaintiff may have viewed and relied upon any statements shown on Caterpillar's website will not advance the inquiry as to whether the absent class members viewed and relied on those statements.  The fact Plaintiff viewed and relied on this alleged warranty will not "simultaneously" prove the claims of any class member. *Deiter*, 436 F.3d at 466; *Noel*, 274 F.R.D. at 192.

### 3.    Plaintiff Is Not An Adequate Class Representative

Plaintiff must also show that it will fairly and adequately represent the interests of the proposed class.  Adequacy is a critical consideration and must be given close scrutiny by the court. *Hall v. Western Elec. Co.,* 672 F.2d 381, 388 (4th Cir. 1982).  The adequacy requirement is not something that can be shrugged off with mere assurances—it implicates the due process rights of those class members who will not be able to speak for themselves in court. *See Broussard*, 155 F.3d at 338; *see also Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940); *Gariety v.*

*Grant Thornton, LLP*, 368 F.3d 356, 366-67 (4th Cir. 2004).  Adequacy requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard*, 155 F.3d at 338 (internal quotations omitted).

First, and most fundamentally, Plaintiff is not an adequate class representative because it is not a part of the class it purports to represent as explained in the standing section above. Second, Plaintiff claims it has been damaged because it was "forced to purchase an additional warranty knowing that repairs were a certainty and sale was not a viable option." (Pl's Mem. at 6, Ex. O.)  However, the proposed class is not limited to those who purchased an extended warranty and Plaintiff will be at odds with other class members who elected not to purchase an extended warranty and who have paid repair costs out of pocket. *Broussard*, 155 F.3d at 339 (conflict existed when named plaintiffs pursued a damage remedy that was irrelevant to a significant portion of the putative class).

Third, Plaintiff stands in conflict with the absent class members because of its "individual" claim for violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 *et seq.* ("UTPA").  The UTPA claim, which is not being and cannot be pursued in a representative capacity, provides remedies such as treble damages and attorney's fees that are not available under the causes of action for which Plaintiff seeks to represent the proposed class.  When the Named Plaintiff has incentive to pursue additional remedies that are irrelevant to the class, the Named Plaintiff is not capable of possessing an undivided loyalty to absent class members. *Broussard*, *supra*.

**4.     Rule 23(b)(3) Cannot Be Met Because Common Questions of Law and Fact Do Not Predominate Over Individual Issues**

Plaintiff has also failed to satisfy the requirements of Rule 23(b)(3).[16]  Under Rule

23(b)(3), class certification is appropriate when it "'would achieve economies of time, effort, and

expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The critical inquiry is whether the proposed class is

"sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. Predominance is a

far more demanding inquiry than the commonality requirement of Rule 23(a):

> [T]he class-action device is not proper simply because the trier of
> fact may arrive at the *same result* in a large number of cases.
> Instead, it is a procedural mechanism that allows a large number of
> cases to be resolved in a *common manner*. Evaluating the merits
> of individual cases is not a common manner of resolving them.

*Thorn*, 445 F.3d at 323 n.13 (emphasis in original).

To determine whether Plaintiff meets the predominance requirement, the Court must

inquire into the elements of RET's causes of action and the nature of the evidence required to

prove the case at trial. *Amchem*, 521 U.S. at 622-23; *Castano v. Am. Tobacco Co.*, 84 F.3d 734,

740, 744 (5th Cir. 1996).  A fact is "common" only if proof of that fact "as to one plaintiff will

establish that fact as to other plaintiffs and class members." *Ala. v. Blue Bird Body Co., Inc.*, 573

F.2d 309, 323 n.25 (5th Cir. 1978) (internal quotations omitted).  The predominating issues in

the case—not just some issues—must be "subject to generalized proof." *Jackson v. Motel 6*

*Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).  If the court finds that members of the

---

[16]  In its Memorandum, Plaintiff is proceeding only under Rule 23(b)(3).  However, Plaintiff
asserts on Page 7 of the Memorandum that it "contemplates amendment of the Complaint" to
seek class-wide injunctive relief for the Court to order Caterpillar to give all proposed class
members an extended warranty, thus implying they will at some point invoke the provisions of
the Rule 23(b)(2).  However, no such motion to amend has been filed.  Moreover, Rule 23(b)(2)
has no application here because the primary relief sought is monetary damages. *Thorn*, 445 F.3d
at 329-30; *Noel*, 274 F.R.D. at 192.  Further, Plaintiff cites no authority in its Memorandum that
a court can order, without consent, a vehicle manufacturer to give a purchaser an extended
warranty in a commercial transaction.

proposed class must present evidence that varies from member to member to make a *prima facie* showing on a given question, then it constitutes an individual question for purposes of Rule 23(b)(3). *Rutstein*, 211 F.3d at 1234. Certification is inappropriate if significant elements of a claim require individualized proof for each class member. *Amchem*, 521 U.S. at 624-25; *see also Broussard*, 155 F.3d at 345 (holding that courts must "rigorously apply the requirements of Rule 23 to avoid the real risk . . . of a composite case being much stronger than any plaintiff's individual action would be."); *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (class certification denied where individual issues would likely lead to many separate mini-trials within the trial of the class-action).[17]

Not surprisingly, Plaintiff says next to nothing about the material facts of its case, relying on conclusory assertions like "[a]ll questions of law and fact revolve around the singular issue that CAT's ACERT engines contain a known latent defect which causes the engine to shut down sporadically and makes the product unsuitable for its normal and foreseeable use." (Pl's Mem. at 11.)  Plaintiff's generalized claims fail to satisfy its burden. *See Broussard*, 155 F.3d at 340.

---

[17] In the specific context of engine defect cases, courts around the country have found that class treatment is rarely appropriate precisely because of the myriad individual factual and legal issues that must be litigated with respect to each potential class member.  This Court, in an opinion issued by Judge Herlong, recognized this fact in denying class certification in an engine defect case:

> Courts are hesitant to certify classes in litigation where individual use factors present themselves, such as cases involving allegedly defective motor vehicles and parts.  The administrative burdens are frequently too unmanageable for a class action to make sense in such cases.

*Cox House Moving*, 2006 U.S. Dist. LEXIS 81132 at * 13 (quoting *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 449 (E.D. Pa. 2000)).  Additionally, the courts have routinely rejected attempts to certify class actions for unjust enrichment claims because of the highly individualized elements related to such a claim. *See, e.g., Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment.").

Here, individualized proof will be required to make any liability and damage determinations, and these individualized issues predominate over any common issues, thus precluding class certification.

> **(a)** **Plaintiff cannot show that every individual or business purchased or used a Caterpillar C13 or C15 engine with the alleged defect.**

Plaintiff's inability to objectively identify class members or to offer any evidence of a common, class-wide defect is fatal on the issue of predominance as well. Plaintiff cannot show through common proof that each purported class member purchased or used a defective C13 or C15 engine. Instead, the only way to decide whether putative class members have engines that are defective and whether any warranty was breached would be to examine each one's individual circumstances.

> **(b)** **Individualized proof is required to determine the cause of the alleged engine failure.**

Causation is an element of Plaintiff's claims, including breach of warranty, negligence, and unjust enrichment. *Lienhart*, 255 F.3d at 149-50 (reversing class certification because individualized proof of causation needed); *Cox House Moving*, 2006 U.S. Dist. LEXIS 81132 at *9-*12 (finding that in order to prevail in design defect claim, each engine must be examined to see if warranty was breached). At this stage, Plaintiff must show that common questions of fact relating to causation predominate over individualized facts. *See e.g., Markarian v. Connecticut Mut. Life Ins. Co.*, 202 F.R.D. 60, 69 (D. Mass. 2001). Even assuming Plaintiff had shown the possibility of a class-wide design defect (which it has not), individualized, fact intensive inquiries into the use and service history of each C13 and C15 engine would be necessary to show why a particular engine failed. *Blades v. Monsanto Corp.*, 400 F.3d 562, 575 (8th Cir. 2005) (holding that plaintiff must explain how, under the controlling law, it will be able to

"prove classwide injury with common evidence").

For example, as explained in detail above, in order for the 2007 EPA compliant C13 and C15 engines to function properly, it is necessary for excessive soot to be burned off by the exhaust system through a process known as "regeneration." While this process is normally completed in the background while the truck is operating, there are warning lights that alert the driver when manual regeneration is required. If the driver fails to heed these warning lights and initiate manual regeneration, the engine may be damaged and stop functioning altogether. With regard to each class member, the Court would have to inquire into the individual facts as to whether the warning lights activated and what, if anything, the driver did in response to the warning light.

Additionally, the function, performance, and maintenance of the regeneration system is impacted by a wide variety of external factors such as the environment in which the vehicle operates, the driving characteristics of the operator, the load factors placed on the engine, the speed and duration of that speed when in operation, whether the truck is power-take-off (PTO) equipped and how, when, and of what duration the PTO is used. (Smock Aff. ¶ 15.) Such factors would bear directly upon whether the operator took appropriate action to ensure proper functioning and maintenance of the regeneration system and will have to be examined for each class member. Plaintiff's circumstances are illustrative of the highly individualized factors that would have to be analyzed because Plaintiff's 30(b)(6) witness testified that RET installed speed and RPM limiters on all of its trucks to improve fuel efficiency (Curtis Dep. at 183-86), an after-market modification which could impact how the regeneration system functions.

Of course, there are numerous other reasons that an engine may shut down apart from problems with the regeneration system, including high coolant temperature or low oil pressure.

(Smock Aff. ¶ 13.) Individual analysis of each engine would be required to determine whether engine performance problems or failures were caused by factors unrelated to the CGI system.

### (c)     Individualized proof is required to determine whether Caterpillar has breached any express or implied warranties.

With respect to Plaintiff's warranty claims, numerous individual issues would have to be examined as to each class member's engine purchase, maintenance, and service history. For example, whether and to what extent an individual class member has warranty coverage will vary from customer to customer based on the individual deal struck by each customer. As explained above, there are many warranty options available to purchasers at the time of sale and thereafter. In addition to the Caterpillar standard warranty, there are extended warranty plans available ("ESC" and "ESC Plus"). Another layer of complexity is added by the fact that further coverages for specific components and parts can be added to the basic ESC and ESC Plus plans. Given the potential range and combination of coverages available to each customer, the individual analysis required simply to determine whether and what type of warranty coverage exists would be overwhelming.

Additionally, to prove a claim for breach of express warranty, each class member would be required to establish that the claimed defect manifested itself during the warranty period. *Kia Motors America Corp. v. Butler*, 985 So.2d 1133, 1138-39 (Fla. 3d DCA), *review denied*, 999 So.2d 644 (Fla. 2008). Such proof would be highly individualized for each class member and precludes class certification since the class proposed here even includes purchasers who are not having problems with their C13 or C15 engines. *Cox House Moving*, 2006 U.S. Dist. LEXIS 81132 at *14-*15.

The court would also be required to determine whether Caterpillar complied with the terms of the warranty as to each individual class member. In this case, for example, the record

reflects that Caterpillar honored its warranty obligations to Plaintiff as shown by the fact that Plaintiff admits it has paid nothing for the repairs it claims are related to the alleged defect.

The Court will also have to analyze whether the customers complied with *their obligations* under the warranty. For example, the law in South Carolina requires the purchaser timely notify the seller of any breach of warranty. *Hitachi Electronic Devices (USA), Inc. v. Platinum Technologies, Inc.*, 366 S.C. 163, 168, 621 S.E.2d 38, 40 (2005). Moreover, under the original Caterpillar Limited Warranty, coverage is expressly contingent upon the customer: "[g]iving timely notice of a warrantable failure and promptly making the product available for repair"; [a]llowing Caterpillar access to all electronically stored data"; "[p]erformance of required maintenance (including use of proper fuel, oil filters, lubricants, and coolant) and items replaced due to normal wear and tear." (Smock Aff., Ex. D.) The circumstances surrounding each individual class member's notice, warranty, and service history will have to be examined to determine compliance with these provisions which precludes class certification. *Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008).

Finally, Plaintiff's claims for breach of implied warranties would also be highly individualized. As described above, Caterpillar's original Limited Warranty disclaims all other warranties, express or implied, and liability for incidental and consequential damages. Thus, in order to state a claim for implied warranty, class members would have to defeat these disclaimers by either showing they did not receive them at the time of purchase or that the warranty failed of its essential purpose, thus defeating the limitation of remedies provisions. Plaintiff here has, in fact, made these assertions in its written responses to Caterpillar's written interrogatories. (*See* Pl's Answers to Def's Interrogs., attached hereto as **Exhibit F**). Given that the C13 and C15 engines are commercial engines, litigation of these two issues would be highly

individualized based on the purchase and repair history of each engine and whether any repairs to that engine were effective. *See Riegel Power Corp. v. Voith Hydro*, 888 F.2d 1043, 1045-46 (4th Cir. 1989) (discussing warranty failing of essential purpose).

        **(d)**    **Individualized proof is required to determine the fact and amount of damages.**

With respect to Plaintiff and each class member, proof of actual injury is necessary and requires individualized inquiry. *See, e.g., Gibbs Props. Corp. v. CIGNA Corp.*, 196 F.R.D. 430, 441 (M.D. Fla. 2000). Although Plaintiff bears the burden of proving class certification is appropriate, Caterpillar has nevertheless engaged an expert economist, Robert E. McCormick, Ph.D., to analyze Plaintiff's claims and determine whether there is any formula or other practical and feasible techniques for assessing damages on a class-wide basis. Dr. McCormick's findings are explained in detail in his affidavit (attached as **Exhibit E**). In summary, Dr. McCormick concludes that there is no method for determining damages on a class-wide basis due to the myriad individualized issues that would have to be examined in order to determine whether each class member was even harmed by the alleged defect and, assuming such injury could be shown, the extent and amount of damages.

        **(e)**    **Individualized proof is required to assess Caterpillar's affirmative defenses.**

"[W]here individual affirmative defenses may be asserted against one plaintiff, but not the entire class, class certification is precluded." *Parks Auto. Group, Inc. v. Gen. Motors Corp.*, 237 F.R.D. 567, 571 (D.S.C. 2006) (citing *Broussard*, *Gunnells*, and *Thorn*); *see also Wal-Mart*, 131 S.Ct. at 2566-61. If the underlying facts or law require an individualized factual examination related to each class member's claim and the defenses to that claim, the Fourth Circuit has "flatly held" that class certification under Rule 23(b)(3) is improper. *See Gunnells*,

348 F.3d at 438; *see also Barnes v. American Tobacco Co.*, 161 F.3d 127, 135-36 (3d Cir. 1998); *Sandwich Chef of Texas. Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 220-21 (5th Cir. 2003). Caterpillar has many potential defenses against the putative class members which will apply individually to each class member, including, but not limited to: (1) written disclaimer of warranties and limitation of remedies and damages; (2) economic loss rule barring tort claims; (3) comparative negligence; (4) product misuse; and (5) failure to mitigate damages.

### 5.    A Class Action is Not a Superior Method of Resolving this Dispute

Under Rule 23(b)(3), Plaintiff must also demonstrate that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." In this case, however, Plaintiff cannot meet this burden for two principal reasons: (1) it has provided no showing that its proposed class action would be manageable as litigation, and (2) realistic alternatives exist for the fair and efficient resolution of its complaints.

Here, Plaintiff alleges it has suffered "substantial financial losses and other damages." (Compl. ¶ 16.) Assuming, for purposes of this Motion, that other class members' damages are similar, there is no reason to believe that individual lawsuits are not economically feasible. The Supreme Court has held:

> While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."

*Amchem*, 521 U.S. at 617 (internal quotations omitted). Plaintiff provides no evidence to establish that individual lawsuits are impractical,[18] and courts have declined to certify on that

---

[18] Indeed, the fact that Plaintiff's suit contains separate "individual" claims, including a claim under the Unfair Trade Practices Act seeking treble damages and attorney's fees, demonstrates that this is the type of case in which individual litigation is feasible.

basis. *See, e.g., Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190-91 (9th Cir. 2001); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 173 (S.D.N.Y. 2003).

Adjudication of the claims of this proposed class would be wholly unmanageable. As previously discussed, individual issues, including issues relating to membership in the class, the existence of a common defect, causation, warranty terms and claims, reliance on statements allegedly made on a website, and damages predominate over any common issues of fact or law to the point that it is impossible to comprehend how a court could supervise such a fact intensive inquiry. *See Lester v. Pecundani*, 217 F.R.D. 345, 353-54 (M.D. Pa. 2003) (denying class certification because the fact-specific and highly individualized nature of the inquiry would present "insurmountable manageability problems."); *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (reversing certification where plaintiffs made no "showing . . . of how the class trial could be conducted"); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 355 (D.N.J. 1997) (certification of a class is inappropriate where the plaintiff fails to "satisf[y the] fundamental requirement of suggesting a feasible means" for trying a class action).

**D.     Plaintiff Improperly Attempts To Litigate A Discovery Issue At The Class Certification Stage**

In lieu of providing the rigorous analysis required for class certification, Plaintiff devotes significant space in its Memorandum to allegations of deficiencies in Caterpillar's responses to Plaintiff's written discovery and complaints that Caterpillar has propounded overly broad discovery to Plaintiff. While these complaints are meritless, Plaintiff cannot avoid its complete failure to demonstrate that class certification is appropriate under Rules 23(a) and (b) and controlling law because Caterpillar allegedly did not give it all the discovery it wanted. Plaintiff cites no case where a court has certified a class because a defendant failed to answer discovery.

First, if Plaintiff claims it has not received needed information during class discovery, it should have moved to compel and asked for extension for filing its motion for class certification. Second, Caterpillar's discovery requests were not overbroad—the information Caterpillar sought through discovery goes directly to critical class certification issues such as Plaintiff's standing to assert class claims and an analysis of elements of Rule 23. Even assuming Caterpillar's discovery was overbroad (which it was not), Plaintiff's remedy was to object.

## V. CONCLUSION

For the reasons stated in this Memorandum, Caterpillar respectfully requests that the Court deny Plaintiff's Motion for Class Certification. Caterpillar requests oral argument on the Motion for Class Certification.

Respectfully submitted,

HAYNSWORTH SINKLER BOYD, P.A.

October 13, 2011
Greenville, South Carolina

Of counsel

SEDGWICK, LLP
Kenneth W Waterway
Email: ken.waterway@sedgwicklaw.com

2400 E. Commercial Blvd.
Suite 1100
Fort Lauderdale, FL 33308

954.958.2500
954.958.2513 (facsimile)

s / H. Sam Mabry, III
_____
W. Francis Marion, Jr., Fed. I.D. No. 1117
E-mail: fmarion@hsblawfirm.com
H. Sam Mabry III, Fed. I.D. No. 3252
E-mail: smabry@hsblawfirm.com
Charles M. Sprinkle III, Fed. I.D. No. 9712
E-Mail: csprinkle@hsblawfirm.com

75 Beattie Place, Eleventh Floor (29601)
Post Office Box 2048
Greenville, S.C. 29602

(864) 240-3200
(864) 240-3300 (facsimile)

Attorneys for Defendant Caterpillar Inc.