IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Robert Elliott Trucking, Inc., | ) | C.A. No. 9:11-CV-00753-RMG |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S REPLY BRIEF** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| v. | **)** | **CLASS CERTIFICATION** |
| | ) | |
| Caterpillar, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiffs file this reply to Defendant's Memorandum in Opposition to Class Certification. Despite the Defendant's assertions, the simple facts remain the same. This is a product liability suit against a manufacturer of engines using a process made common. Litigation concerning the product's design raises facts and issues which are common to every single consumer. The class is easily ascertainable and admittedly numerous. The objections raised to class certification have been raised by Caterpillar, Inc. and failed in this district in other product liability lawsuits.

***Wal-Mart* and "Rigorous Analysis"**

The Defendant has raised and discussed the recent Supreme Court decision Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) arguing that Wal-Mart endorses a restrictive view of class certification and therefore supports denial of class certification in this instance. Wal-Mart, as this Court is aware, was not a products liability case. Wal-Mart was believed to concern approximately 1.5 million female employees of the defendant

nationwide. The allegations revolved around the individual treatment of females in the employ of the defendant in stores in each state across the entire nation.

The theory supporting certification was essentially that Wal-Mart did not have a uniform policy, Plaintiffs alleged that a lack of a uniform policy fostered wildly disparate treatment in various stores.  The commonality was that there was no uniformity.  Despite this somewhat unusual assertion of commonality and a massive putative class with multiple jurisdictional laws being applied, the District Court certified the class.  When certified, Wal-Mart was the largest certified class action in the history of our country.  Certification occurred despite the unusual proposition that no uniformity can be the requisite uniform commonality.  Given the facts, the size of the class, the various state laws implicated, the difficulty of ascertainability, and the individual nature of employment, this case is a remarkable endorsement of an expansive view of Rule 23.

Despite the extraordinary facts behind Wal-Mart, defendants continue to assert and Courts continue to reject that Wal-Mart dictates decertification.  In granting class certification over argument that Wal-Mart prevented certification, the Court in Bouaphakeo v. Tyson Foods, Inc., 5:07-CV-04009-JAJ, 2011 WL 3793962 (N.D. Iowa Aug. 25, 2011)  dinstinguished Wal-Mart.

> *Dukes* involved "literally millions of employment decisions" and
> "[w]ithout some glue holding the alleged *reasons* for all those
> decisions together, it [would] be impossible to say that examination
> of all the class members' claims for relief will produce a common
> answer to the crucial question *why was I disfavored.*"

That Wal-Mart was certified, then affirmed in part, by the Ninth Circuit, is great evidence that Robert Elliott Trucking, Inc's allegations are comfortably within the confines of Rule 23.[1]

The "rigorous analysis" language refers to an analysis of how class treatment can benefit the process. The Courts are to analyze the type of complaint. Does the complaint center around central facts that if established would benefit class members? Is the class ascertainable? Are the facts known and the facts which can be discovered consistently applicable to the class?

The Fourth Circuit, in affirming class certification, has cogently stated the proper questions raised by Wal-Mart.

> As the Supreme Court recently clarified, in order to satisfy the commonality requirement, the plaintiff must "demonstrate that the class members 'have suffered the same injury,' " *Wal–Mart Stores, Inc., v. Dukes,* 131 S.Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982)), and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *id.*

Gray v. Hearst Communications, Inc., 10-1302, 2011 WL 3734413 (4th Cir. Aug. 25, 2011)

This analysis, the proper analysis stated by the Fourth Circuit after the Wal-Mart decision, results in this Court granting class certification.

*Discovery*

Defendant has objected to Robert Elliott Trucking, Inc. raising certain inadequacies in the discovery process in its certification memorandum stating

---

[1] See also Delagarza v. Tesoro Ref. & Mktg. Co., C-09-5803 EMC, 2011 WL 4017967 (N.D. Cal. Sept. 8, 2011)

3

that discovery matters are appropriately raised in a motion to compel.  It is not Robert Elliott Trucking, Inc. who tied these two issues together.  If Defendant's argue, contrary to the actual intent of the language, that a rigorous analysis must be conducted on the merits, it is nonsensical to engage in a discovery process that forbids probing the merits.

***The Plaintiff's Known Defect – The Inclusion of Latent Defects***

While merits discovery by the Plaintiff has not been allowed, the class discovery that has occurred has revealed hundreds if not thousands of consumers of ACERT C-13 and C-15 engines.  Documents produced by the Plaintiff, the 30(b)(6) deposition of Robert Elliott Trucking, Inc., and Plaintiff's expert's affidavit all evidence a defective product.

The Plaintiff retained Lance Watt to inspect the Plaintiff's CAT ACERT engine and determine (1) if the regeneration was defective and (2) if those defects were consistent with other complaints made about the CAT ACERT engine.  He answered both of these questions in the affirmative. (Exhibit 1).

If the engine is defective, each consumer, sitting in a similar position as RET has purchased a defective engine.  Each consumer has a regeneration system designed, distributed and sold by the Defendant and/or its agents.  It is immaterial to certification that the defect may not have yet resulted in manifest problems.  See In re Zurn Pex Plumbing Products Liab. Litig., 644 F.3d 604, 617 (8th Cir. 2011).  The Zurn Court stated that these contentions by defendant did not negate the advantages of class treatment.  Plaintiff retained an expert who

4

has inspected the ACERT engine purchased by Robert Elliott Trucking, Inc. and has determined that it is defect and that its defect would result in complaints similar to those heard in public forums around the industry. The Plaintiff presents to this court an easily definable issue, a particularly described problem and an ascertainable class, whom would all benefit by the determination of the common issues. Most significantly, the Plaintiff attempts to answer the question of "is the ACERT regeneration system a defective system."

### *This Class Serves the Recognized Purposes of Rule 23*

All of the primary purposes for this Rule 23 are served by class application to the ACERT regeneration defect. Those purposes include the increased efficiency of the Court avoiding duplicative litigation, the ability to avoid inconsistent results, and the increased efficiency of litigation costs for the parties.

Most of the class members are small business owners who have made the significant investment which affects their livelihood. Rule 23 was designed for exactly this situation which is why, as the current annotations reflect, courts have recognized this rule should be given a liberal, rather than a restrictive, interpretation. Eisen v. Carlisle and Jacquelin, C.A.2 (N.Y.) 1968, 391 F.2d 555, on remand 50 F.R.D. 471, on remand 52 F.R.D. 253. See, also, McGrath v. Tadayasec Abo, C.A.Cal.1951, 186 F.2d 766, certiorari denied 72 S.Ct. 38, 342 U.S. 832, 96 L.Ed. 629; In re Caesars Palace Securities Litigation, D.C.Pa.1973, 360 F.Supp. 366; Alameda Oil Co. v. Ideal Basic Industries, Inc., D.C.Colo.1971, 326 F.Supp. 98; Brady v. Lac, Inc., D.C.N.Y.1976, 72 F.R.D. 22; Held v. Missouri Pac. R. Co., D.C.Tex.1974, 64 F.R.D. 346; Frankel v. Wyllie & Thornhill, Inc.,

D.C.Va.1972, 55 F.R.D. 330; Thomas v. Clarke, D.C.Minn.1971, 54 F.R.D. 245; Berland v. Mack, D.C.N.Y.1969, 48 F.R.D. 121.Federal Civil Procedure.

*This Class is Harmonious with the Growing Trend in Product Class Actions*

Courts continue to recognize the advantages of the proper use of Rule 23 in product liability actions, particularly in cases of involving property damage. Most recently, as discussed earlier, in an action concerning defective plumbing products placed in homes, the Eighth Circuit affirmed class certification over protests from defendant that many of the class members did not have standing because they had not yet suffered actual harm. In re Zurn Pex Plumbing Products Liab. Litig., 644 F.3d 604, 617 (8th Cir. 2011). The Zurn Court stated that these contentions by defendant did not negate the advantages of class treatment.

Similarly, the Seventh Circuit in Pella Corp. v. Saltzman, 606 F.3d 391 (7th Cir. 2010) cert. denied, 131 S. Ct. 998, 178 L. Ed. 2d 826 (U.S. 2011) affirmed a multistate class certification involving aluminum clad casement windows to be placed in homes and other structures. Many of the same arguments raised by Caterpillar, Inc. were also raised by Pella.

Application of Rule 23 to Plaintiffs' class and CAT's defective ACERT engines is also consistent with recent cases decided in this District. In Brunson v. Louisiana-Pac. Corp., 266 F.R.D. 112, (D.S.C. 2010), Judge Patrick Michael Duffy certified a class of consumers who had purchased defective trim board to be placed on their homes. While granting certification, the Court noted that

defendant's opposition to certification parroted the unsuccessful opposition to certification made in another home products case, <u>Thomas v. Louisiana-Pac. Corp.</u>, 246 F.R.D. 505, 506 (D.S.C. 2007).

### *The Timing of Class Certification And the Current Trend*

In interpreting Rule 23 (c)(1)(A), many courts have begun to adopt a process that has the plaintiff(s) move for class certification at earlier and earlier stages. This case has utilized that process. This trend of certifying early highlights the possibility that modification may be required as discovery is exchanged and facts evolve. In this case, only a small amount of the overall discovery necessary has been accomplished, however, it is clear that the establishment of certain common facts bear on the viability of the entire putative class. If, as discovery proceeds, it becomes necessary to modify the class either by enlarging or shrinking the definition or to create subclass designations, it is plain from the cases that Rule 23 permits this modification.

### *The Class Is Easily Ascertainable*

Plaintiffs represent an identifiable class of narrowly defined purchasers of CAT ACERT engines. Documents produced in discovery exhibit the ability to ascertain the distribution of the defective product. Plaintiffs attached a spreadsheet to its Memorandum is Support which not only shows VIN numbers but also mileage readouts.

"'Although the identity of individual class members need not be ascertained before class certification, the membership of the class must be ascertainable…the class must be defined such that class members can be

7

identified using objective data." Reidel v. XTO Energy, 257 F.R.D. 494, 506 (E.D. Ark. 2009) (citations omitted). In addition, the "ascertainability" test for a class definition recognizes that in a class case seeking relief, at some point in the case, the Court or a claims administrator will have to determine who is entitled to make share in the class benefit, i.e., who has CAT ACERT engines. See Delsing v. Starbucks Coffee Corp., 2009 WL 3202378 (D. Minn. Sept. 30, 2009) ("the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member," *quoting* 7A Charles Alan Wright, et al. *Federal Practice and Procedure* § 1760 at 140 (3d ed. 2005); Saltzman v, Pella Corp., 257 F.R.D. 471, 475-476 (N. D. Ill. 2009) ("While the class does not have to be so ascertainable that every potential member can be specifically identified at the commencement of the action, the description of the class must be sufficiently definite so that it is administratively feasible for the court to ascertain whether a particular individual is a member.").[2]

CAT has asserted that not all putative class members have experienced the manifest problems of the latent defect. Zurn clearly states that manifestation is not necessary. Ascertainability is not a proxy for standing to assert a claim.

---

[2] Obviously, there is some level of individual proof required in the claims process – i.e., someone has to prove they have ACERT engine to receive a share of the class benefit. Courts have recognized, that this level of individualized inquiry as to the entitlement of individuals to share in a class recovery – as to the exact amount of a class members' damages based upon a common formula – does not present a problem sufficient to overcome the predominance of the common issues in a case such as this one. See Kohen v. Pacific Inv. Management Co., LLC, 571 F.3d 672, 676 (7th Cir. 2009) (if a defendant is found liable, parties will submit claims if they have been damaged); Carnegie v. Household International, Inc., 376 F.3d 656, 661 (7th Cir. 2004) (some level of individualized inquiry as to entitlement to damages does not defeat certification). If it could, there could never be a class action unless every class member bought the same amount of stock or a product.

As Judge Posner recently noted, requiring that the Court "determine which class members ha[ve] suffered damages" would be "putting the cart before the horse ..[and] would vitiate the economies of class action procedure; in effect the trial would precede the certification."  Kohen v. Pacific Investment Management Company, LLC, 571 F.3d at 676.  "[T]he problem lies in the court's ability to ascertain the class, not whether the putative class members have been aggrieved." Kurihara v. Best Buy Co., Inc., No. C 06-01884, 2007 WL 2501698, at *5 (N.D. Cal. Aug. 30, 2007); see Kohen v. Pacific Inv. Mgmt Co., 571 F.3d at 677 (that a class may include some "uninjured persons does not preclude class certification, it is only when the definition includes people who could not have been injured that the definition is overbroad"); Joseph v. General Motors Corp., 109 F.R.D. 635, 639 (D. Colo. 1986) (finding unimportant at class certification stage that the class may include persons who have not had difficulties with their engines or who do not want these problems fixed).

The class definition here is based upon objective criteria and allows both the Court and members of the public to determine class membership based upon objective criteria. Furthermore, documents produced by CAT show a robust database with thousands of names of individuals who purchased trucks with CAT's ACERT engines.  Additionally, the records of dealers, mechanics, and truck owners themselves may supplement the documented distribution patterns and individual consumers known to CAT. Because the class can be easily ascertained through a combination of the use of self-identification, warranty records, publication of notice, and other verification, an identifiable class exists.

9

*Conclusion*

CAT employs a single design and a single process to make a single regeneration system which it sold to all putative class members. The establishment of facts evidencing a defective design, a defective process, or a product which breaches the Uniform Commercial Code, will resolve issues "central to the validity" of each class member's claims against CAT.

Furthermore, the class is easily ascertainable. Owners are identifiable and being tracked through central databases possessed by CAT.

For all of the foregoing reasons, this Court should grant Plaintiff's Motion for Class Certification.

        Respectfully submitted,

        A. G. Solomons, III
        SPEIGHTS & RUNYAN
        200 Jackson Avenue, East
        Post Office Box 685
        Hampton, SC 29924
        (803) 943-4444

        By:   s/A. G. Solomons, III

        ATTORNEYS FOR THE PLAINTIFFS

October 21, 2011
Hampton, South Carolina